Affirmed and Memorandum Opinion filed November 9, 2006








Affirmed
and Memorandum Opinion filed November 9, 2006.

 




 
 
  
 
 




In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00548-CR

_______________

 

RAUL MARTINEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                           
                                    

On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1021399

                                                                                                                   
                            

 

M E M O R A N D U M   O P I N I O N

Appellant
Raul Martinez was involved in a two-car collision in which Benjamin Boatman, a
passenger in the other vehicle, was killed.  Martinez was indicted and
convicted  of manslaughter in connection with the accident.  He appeals his
conviction on the ground that the evidence is factually insufficient to
establish that he recklessly caused Boatman=s death.  We affirm.








I.  Factual and Procedural History

On
December 29, 2002, Martinez was a Harris County Precinct Four Deputy
Constable.  At approximately 8:00 p.m., Martinez and fellow deputy Steve Cannon
met for dinner at a Wendy=s restaurant near the intersection of Windfern and FM 1960.
Shortly after the deputies left the restaurant in separate vehicles, Martinez
collided with a Ford Explorer making a left turn into an apartment complex on
Windfern.  Benjamin Boatman, a passenger in the Explorer, was killed.  Martinez
was indicted for unlawfully and recklessly causing Boatman=s death by operating his vehicle at
an improper speed, failing to keep a proper lookout, failing to take evasive
actions, and operating his vehicle at night with the lights and emergency
equipment off.  A jury convicted Martinez of manslaughter and made an
affirmative finding on the use of a deadly weapon, i.e., a motor vehicle. 
Martinez was sentenced to eight years= probation, and this appeal ensued. 

II.  Issue Presented

In his
sole issue on appeal, Martinez contends the evidence is factually insufficient
to support his conviction for manslaughter.  Specifically, Martinez argues the
evidence of recklessness falls short of proof beyond a reasonable doubt.  See
Tex. Penal Code Ann. ' 19.04 (Vernon 2003) (defining
manslaughter as recklessly causing the death of an individual).  A person acts
recklessly, or is reckless, with respect to circumstances surrounding his
conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or
the result will occur.  Id. at ' 6.03(c).  The risk must be of such a
nature and degree that its disregard constitutes a gross deviation from the
standard of care that an ordinary person would exercise under all the
circumstances as viewed from the actor=s standpoint.  Id.  








III.  Standard of Review

Before
we may reverse for factual insufficiency, we must first be able to say, with
some objective basis in the record, that the great weight and preponderance of
the evidence contradicts the jury=s verdict.  Watson v. State,
No. PD-469-05, 2006 WL 2956272, at *10 (Tex. Crim. App. Oct. 18, 2006).  When
reviewing the evidence, we must give appropriate deference to the jury=s findings in order to avoid
intruding on the factfinder=s role as the sole judge of the weight and credibility of the
witness testimony.  Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000) (en banc).  We do not re-evaluate the credibility of witnesses or the
weight of evidence, and we will not substitute our judgment for that of the
factfinder.  Johnson v. State, 967 S.W.2d 410, 412 (Tex. Crim. App.
1998).  Therefore, unless the record clearly reveals a different result is
appropriate, we Amust defer to the jury=s determination concerning what
weight to give contradictory testimonial evidence because resolution often
turns on an evaluation of credibility and demeanor.@  Johnson, 23 S.W.3d at 8. 

IV.  Analysis

In a factual sufficiency review, we must discuss the
evidence appellant argues best supports his claim.  Sims v. State, 99
S.W.3d 600, 601 (Tex. Crim. App. 2003).  Here, appellant rests his claim of factual insufficiency on
the conflicting testimony regarding his speed and whether his headlights were
on prior to the collision.

It is
undisputed that the speed limit in the area where the accident occurred is
forty-five miles per hour.  At trial, Martinez admitted he was exceeding the
posted speed at the time of the accident, but testified he was traveling at
fifty or fifty-five miles per hour with his headlights on.  According to
Martinez, the Explorer veered into his lane and he swerved A[e]ither to the right or to the left@ to avoid the vehicle, but did not
have time to apply his brakes.








Wrecker
driver Walter Seabaugh testified that on December 29, 2002, he was parked
watching the intersection of FM 1960 and Windfern for accidents and observed
two police cars in the parking lot of a Wendy=s restaurant.  Seabaugh saw two
officers exit the restaurant and sit outside their cars talking.  At trial,
Seabaugh identified the officers as Martinez and Deputy Steve Cannon.  Seabaugh
further testified that he followed Martinez, and had to drive seventy miles per
hour to keep up with him.  According to Seabaugh, Martinez did not turn his
lights on, and Seabaugh started to telephone Precinct Four to report that a
patrol car was driving without headlights[1]
when he saw a vehicle stopped in the street waiting to make a turn into an
apartment complex.[2]  After the
first deputy=s car passed the stopped vehicle, it started to turn, but was struck by
Martinez=s patrol car.  According to Seabaugh,
he parked his wrecker partially blocking traffic.  Deputy Cannon arrived as
Seabaugh walked to Martinez=s patrol car, and the two men approached the car together. 
The defense attempted to show that Seabaugh was not present at the scene as he
claimed by eliciting testimony from other witnesses that they did not remember
a wrecker or a wrecker driver at the scene; however, Sergeant Michael W. Young
of Harris County Constable=s Office Precinct Four  was present at the scene after the
accident, and he recalled having made a prior statement that ABy the time that I spoke to Deputy
Cannon, some wrecker driver, somebody came up and said, >Well, one of these cars didn=t have their lights on; or somebody
was driving without their lights.=@  Deputy Cannon also recalled that an
unidentified civilian went to Martinez=s car with him and helped him open
Martinez=s door.








Eyewitness
Chanel Stone was at the Wendy=s restaurant at the same time Deputies Martinez and Cannon
were there.  At the time of the accident, she and a friend were walking back to
the apartment complex on Windfern.  She testified that she heard tires
squealing, and when she looked in the direction of the sound, she saw the first
officer=s car pull out, followed by a second
patrol car that did not have headlights on.  The first patrol car=s Aengine rev[ved] up really hard, and
[he] flew by [Stone].@  The second car was going Awell over@ the speed limit with its headlights
off.  Neither patrol car was using its emergency lights or sirens.  Stone
pulled her friend further from the road, and said of the second car, Athat guy is going to hit somebody.@  She looked up again just after the
collision, and ran to the scene.  When she arrived, she discovered that her
boyfriend, Matthew Reid, had been one of the occupants of the Ford Explorer.

Angela
Knight, the driver of the Ford Explorer, testified that she is not sure if she
came to a complete stop before starting the left turn into the apartment
complex; however, she did not Acut the corner@ to make the turn, and could not have
done so, because she had to pass between some poles at the complex entrance. 
According to Knight, she didn=t know how to cut corners in the SUV, which she=d had for Amaybe a month.@  Knight testified that before she
turned, she saw no headlights or emergency flashing lights and heard no siren. 
Before completing the turn, her vehicle was struck by Martinez=s patrol car.

Matthew
Reid, one of the surviving passengers from the Ford Explorer, testified that
Knight brought the Explorer to a complete stop before slowly starting the left
turn.  He further testified:

Reid:   AI just remember the car fixing to make the turn; and
then I looked up.  I see a flash of light, and then I am out.  I blacked out. 
I remember seeing kind of like headlights turn on and then I blacked out.  That=s all I remember.

* * * * *

Reid:   I didn=t actually see the vehicle coming towards us.  I don=t remember anything.  I meanC

State:  Well, you testified that you saw what you described as
headlights turning on; is that correct?

Reid:   Yes.








State:  And would that imply that they were off prior to them being
turned on?

Reid:   They would have had to have been off.

* * * * *

State:  Can you swear to this jury that it wasn=t somebody flashing their bright lights?

Reid:   Yes, I can because I don=t
remember seeing any lights before that.  It was pitch black; and then right
before I blacked out, I saw a light.

State:  Could it have been as a result of the concussion that you saw
lights?

Reid:   It could have been.  Yes.

Deputy
Steve Cannon testified that in the time between his departure from the restaurant
and the accident, he did not know where Martinez was, at what speed he or
Martinez were traveling, or whether Martinez had his headlights on.  

Deputy
David Pearson reconstructed the accident and concluded that Martinez was
driving between sixty-nine and seventy-six miles per hour before striking the
Ford Explorer, which was traveling at eight to thirteen miles per hour.  Dr.
Dirk Smith criticized Pearson=s methodology, but did not offer an estimate of the speed of
either vehicle.  Sergeant Michael Young offered similar criticism of Pearson=s methodology, and using a different
method, Young Acame up with was a speed that cannot be attributed to any one vehicle.@  He further testified:

For Deputy
Martinez=s car, the amount of energy that was used that we can
account for was about 58.73 on the high end. On the low end it was
50.76 . . . For hers, using Deputy Pearson=s energy loss for her vehicle . . . not saying she was
going this fast, but the amount of energy equivalent was on the high end 55 and
on the low end 51 average . . . I mean a high of 55 and a
low of 51, and we know that=s not right.  

Timothy
Charles Lovett, a Herst police officer, reviewed the findings of Pearson and
Young and concluded that Martinez was traveling at a speed between sixty-eight
and seventy-five miles per hour before the collision.








Sergeant
Young also retrieved and stored lamps from the vehicles.  Experts for both the
prosecution and the defense criticized the manner in which Young stored the
lamps.[3] Devin
Crago-Stasicha, trace evidence analyst for the Department of Public Safety,
Houston Regional Crime Lab, examined bulbs from lights from Martinez=s patrol car and Knight=s Explorer.  Except for one item, the
items submitted were from the rear of the vehicles.[4] 
Crago-Stasicha analyzed three sets of bulbs from the rear of Martinez=s vehicle, and her results ranged
from indeterminate to Adamage . . . consistent with the lamps having been off at the
time of damage.@  She found no evidence that Martinez=s headlights were on at the time of
damage, but agreed that A[e]xamining lamps from the opposite end of the area of the
collision is generally not very useful.@  Dr. Dirk Smith testified that
analysis of the bulbs from the vehicles produced indeterminate results.  

In sum,
all of the witnesses, including Martinez, agree that he was exceeding the
posted speed limit at the time of the accident.  Of the five people who
witnessed the events immediately before the collision, four eyewitnesses
testified that Martinez=s headlights were off immediately before the collision; only
Martinez contends that his headlights were on.  On this record, we find no
objective basis in the record on which to conclude that the great weight and
preponderance of the evidence contradicts the jury=s verdict.  Accordingly, we overrule
Martinez=s sole issue on appeal.








V.  Conclusion

For the foregoing
reasons, the judgment of the trial court is affirmed.

 

 

 

/s/        Eva
M. Guzman

Justice

 

 

Judgment rendered and Opinion filed November 9, 2006.

Panel consists of Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 









[1]  As Seabaugh demonstrated at trial, he has memorized
the precinct=s phone number; however, as a wrecker driver, he had
the precinct=s phone number on speed dial.





[2]  Seabaugh hung up before the precinct answered
because he wasn=t sure if the officer in the first car was going to
tell Martinez his headlights weren=t
on.  





[3]  One of the lamps was placed in a used coffee cup.





[4]  The only lamp taken from the front of a vehicle was
taken from the Knight=s Ford Explorer, rather than from Martinez=s patrol car.